Good morning, everyone, and welcome to the first day of our sitting. I'm pleased to have Judge Luck to my right, your left, and Judge Choflat, who should be here on my left, is feeling a little under the weather this morning and this week, and so I think his plan is to listen to the oral arguments after the fact and then conference with Judge Luck and myself to reach decisions in the cases. So you won't, you know, get your typical questions from Judge Choflat, but you should consider yourself arguing to him as well. We've only got two cases this morning, and before I call the first, I'll just give you a few prefatory remarks. I always give sort of two. There's a typical speech from me. One, please know, most importantly, that we have read the materials underlying your case, the briefs, the statutes, the cases, the record materials. We're familiar with your case, and so don't waste your own precious time with a bunch of factual and procedural ramp-up. No need. Just get right to it. And second, you'll understand, I'm sure, sort of the traffic light system that we have. When the yellow light goes off, understand that your time is coming to a close. When the red light goes off, understand that your time is up. I am not, for better or worse, the kind of judge who is going to cut you off in the middle of a syllable and tell you to sit down. But do know that at that point, it's time to begin to wind up your argument, and we may carry you beyond the allotted time with questions. It's entirely possible, and don't worry about that. All right, so with that, let's call the first case. 21-12859, United States v. Michael Files. We have Mr. Wallenegg here for the appellant, Mr. Gray for the appellee. Mr. Wallenegg, when you're ready. Thank you, Judge Newsom, and may it please the Court. The text, context, and purpose of Section 404 of the First Step Act all agree that district courts have the authority to impose a reduced sentence for powder cocaine offenses when, as here, the defendant also has related covered crack cocaine offenses. The text of subsection B in particular— Can you get to the precedent issue first? Because that guides us before we get to what I'm sure is a very thorough understanding of the text of 404B. Absolutely. So the government is relying on Denson, and that isn't finding precedent here for three reasons. First, the references on page 1089 of Denson to non-covered offenses outstripped the facts of that case. The second is that those statements— You're right about that, and certainly you cite and correct the general rule that a case cannot decide more than the facts there. But in the context—talk about context—in the context in which that statement was made, it was made in the context of deciding the argument that was brought to the Court, which was that this was a Brown-style case, and certain due process protections that were dictated by Brown needed to be there. And in making the independent holding that Brown didn't apply, we said, one, it didn't meet the first element, and as to the second element, it didn't meet it because it was a limited remedy, including the fact that it only applied to covered and non-covered offenses. So yes, as a matter of—you're correct to say that the facts didn't call for that, but certainly the argument that was raised and that was decided called for it, did it not? I disagree with that, Your Honor. And as this Court has said on numerous occasions, regardless of what a court says in its opinion, it cannot be holding if it goes beyond the facts of the case. Yes, but counsel, if the issue to be decided is, is this a limited remedy or not which gets due process, and in the course of stating that lays out three different reasons why that are independently valid, including that it's a limited remedy because it only covers certain offenses and not others, that's not a holding as to the facts. That's a holding as to the law. Two points on that, Your Honor. First is the reference to non-covered offenses wasn't essential to this Court's decision. It could have left that out altogether and still reached the same conclusion as to the critical stage analysis. The independent holding in Denson was that a Section 404 proceeding is not a critical stage. And as you mentioned, the first prong of that wasn't met because the First Step Act is an act of congressional lenity. And as to the second point, this Court wrote that courts don't exercise significant discretion, and then it gave some potential examples of how that might be limited. But as to that, again, the reference to non-covered offense itself wasn't raised by the facts, and it wasn't necessary to the conclusion. Send it in. I'm sorry. No, no, no. Continue. The issue is, though, as I see it, is there are lots of ways a court can decide things. In other words, you know, in most of the cases we have, there's a decision and the decision is clear. What's not clear is which path we could take. There are three. There's a right path, a left path, or a center path. In this case, the court chose to do all three. And that's a choice that it can make, and we've been clear that where a court does go out of its way to say that it's making alternative and independent holdings, that those holdings are there. So, yes, the case could have been decided, you're correct, differently without it, but it did decide that issue. And I guess the question is, doesn't our case law say that we are bound by that decision? No, Your Honor. Again, it wasn't necessary because it didn't have to do so. It was not precedential holding. Well, can I just ask you a question then sort of following on Judge Luck's question about alternative holdings? I mean, the fact that we indulge this idea, rightly or wrongly, of alternative holding shows that a strict necessity analysis can't be right, right? Because alternative holdings in and of themselves, by definition, are never necessary to the decision of the case. Yes, Your Honor, but at the same time, the independent holding here was that a Section 404 proceeding is not a critical stage. And then several steps beyond that was an example of a potential limitation. Well, and I guess the reason I'm — the point that I'm trying to make is that you're right, that we're sort of like a fork or two down the road. But if at that tertiary fork you say, well, the reason it's not holding is because it wasn't necessary to the decision of the case, neither was Fork 1, or, you know, sort of what happened at Fork 1 where there was alternative holding 1 and alternative holding 2. Neither of those two things is necessary to the case. So I just wonder whether like a strict necessity analysis can aid you at the tertiary fork when you've got to give it up at the primary fork. Yes, Your Honor, it does. And I think this Court's precedent is just taking the general rule that if it's not necessary to the decision, which is what this Court has said, then, you know, if the Court says it can resolve this in either way. But here the independent holding was that there's not a right to an in-person hearing because it's not a critical stage. And this was a tertiary, you know, four steps down the road, and it was an example that wasn't raised by the facts. But you understand the point that I'm making, right? I mean, like, so which of the two alternative holdings was necessary to the decision of the case? I mean, I think the answer has to be neither, logically, right? I guess in a strict sense, and I see your point, and I'm not trying to dispute that, you know, the independent holding is that concept does allow for precedent. This Court's been clear on that. But this Court's also been clear that when things aren't raised by the facts and circumstances presented to the Court, that no matter what a court says in its opinion, it can't create holding. And then the paragraph that the references to noncovered offenses, those examples are in, starts from the proposition that this is a limited remedy, that courts aren't exercising significant discretion. And Concepcion just abrogates that totally. Concepcion cites this very page of Denson and says later on in his opinion, this is the wrong approach, that courts are exercising significant discretion. And so in footnotes 3 of Concepcion, the Supreme Court said that the very purpose of Section 4 for proceeding is to reopen final judgments. Counsel.  You started off by, and I asked you about, the general proposition that a case cannot hold beyond its facts. Do you agree with that general proposition? Yes. What are the facts of Concepcion? So in Concepcion, the question presented before the Court. I know. What are the facts of Concepcion? It was a noncovered, sorry, a covered offense for crack cocaine. There's only one offense. Yes? Absolutely, yes. How possibly could the Court decide the issue that we have and abrogate a holding on that issue? Again, assuming Denson is a holding, and I know you don't agree with that. But how possibly could, under our abrogation case law, a Supreme Court abrogate a case for facts it does not have and an issue it did not decide? Two things, Your Honor. First, the starting point in Concepcion was that courts have broad authority. It's not the facts of Concepcion, but the starting point in Concepcion was that courts have broad authority. Right. A case cannot hold beyond its point. So the authority it's talking about can never have been discussing the authority for noncovered offenses because the case did not implicate a noncovered offense. If the statement in Concepcion were dicta, it would still be Supreme Court dicta? It's not dicta. It absolutely is valid as to covered offenses in that kind of resentencing. But we have a separate question. Right? I guess I'm not understanding the last part of your question. Right. We have a separate question. Concepcion answered the question of what authority you have on a covered offense. There is no doubt at a resentencing for a covered offense, that is the level of authority you have. And to the extent we said to the contrary in Denson, that was wrong. That seems to me to be separate and apart from what authority a court has to decide whether to resentence on a noncovered offense, a fact pattern that Concepcion didn't have and an issue it did not decide. Right? Well, if the — if the statements in Concepcion aren't binding as to covered offenses, then the statements in Denson certainly aren't binding by the same logic, in which case go to the text, the plain text of the statute. Well, let's — there's another case you have to worry about, and that's Potts. Right? I don't think we have to worry about Potts. Okay. Let's then — let's dive into your not worry. So, at page 1145 in the introduction, we say, however, the First Step Act did not change his, meaning the defendant's, five-year concurrent supervised release term on his firearms convictions. So, no matter the drug convictions, Potts still had a five-year supervised release term on his firearm conviction. Then, later on, right before and after footnote three, so footnote — right, the text of it and then the footnote, as to case number — 06, criminal case number 80081, Potts had a five-year supervised release term on his firearm conviction, no matter the supervised release term of his drug conviction in the case. Cite footnote three. Quote, while Potts' counsel does not raise the issue, the probation office's memorandum said that the new supervised release term on the drug conviction in that case number was five years when it was four years. That seems to be a typo. But we conclude any error in the probation office's memorandum was harmless, as Potts had five years of the supervised release on his firearm conviction anyway. How is that conclusion that it was harmless because it had an unaffected, noncovered offense, not a holding? Your Honor, in the same probation memorandum that Potts references, it says there was an eight-year minimum supervised release term on the covered offense. So the court couldn't — the district court could not go below that. And so it wasn't — Is that fact mentioned in the opinion? It is mentioned in the opinion that the probation memorandum said that there was an eight-year minimum.  So our conclusion that it was harmless, how could that not be a conclusion of the court, a holding of the court? Because no matter what this court said in its decision, the district court couldn't go below eight years. I understand that. But, again, this goes back to what I said. There are eight ways that a court can decide something on any number of issues. But once it makes its choice, isn't that conclusion, the holding, that choice of the court? No, Your Honor. As to the general — going back to the general principle, the court can't decide anything beyond the facts and circumstances presented. And if it's not necessary — Well, that case had — that fact was presented. Your Honor, it wasn't necessary to determine whether he could receive relief below eight years or receive any relief on the noncovered offense. All right. Let's go to footnote 4. Quote, The government argues that a remand is not required because we can look to the district court's compassionate release order to conclude that it would be futile to remand as the district court reaffirmed the same terms of the supervised release in that order. In effect, the government says remand is unnecessary because any alleged harmless — any alleged error was harmless. We need not address this argument, given our holding above. Further, in other words, alternatively, we note that Potts is not only released — not only now released, but also has a five-year concurrent term of supervised release on his firearm conviction that is not impacted by the First Step Act. How is that not an alternative holding? Again, Your Honor, the — it was not necessary to reach that conclusion because the district court denied all relief under the First Step Act. The 10-year term of supervised release and the — you know, it could only go down to eight years. And the only question was whether he'd go down from 10 to eight. And so it wasn't necessary to reach anything about the — about the non-governor defense. I see my time is up. So your time is up, but will you spend a few minutes talking to us about the de novo, we'll say, interpretation of the statute? Should we need to get there? Absolutely, Your Honor. I'd love to. Starting with the text of subsection B in particular, this Court has said on — that when Congress uses a phrase in one part of a statute and then leaves it out in another, it's presumed that that decision was meaningful. And here Congress didn't say that a court may only impose a reduced sentence for a covered offense. It simply said impose a reduced sentence. So does that mean — I mean, it seems to me that there are several sort of waystations here. It might mean, you know, only — it might be limited, you know, only to, for instance, you know, the covered offense. That's the — you know, sort of the rigid position at one end of the spectrum. The other, which maybe you're arguing for, is that it — there is no limitation at all. That once the camel's nose is under the tent, that you can resentence for any unrelated offense. I mean, it seems to me that those are textually the only two plausible alternatives. Is the latter the one you're arguing for? Our position is that once you do — as the Seventh Circuit said in Hudson, that having a covered offense is a threshold question of eligibility, and then from there the Court can craft an appropriate reduced sentence, an overall sentence. And this is borne out by the structure of Section 404 as a whole. The limitations are in Subsection C. And one of those limitations at the very last part of that subsection is that nothing is — no district court is required to grant relief. So this — Counsel, in Federal courts, do we give a total sentence, or does each offense come with a separate sentence? It's both. No, no, it's not both. Which one? Each offense has a sentence, but then the courts often refer to a total sentence. No, no, no. And the guidelines — I don't care what a court says on its own. As a matter of statutory law, as a matter of the guidelines, how are sentences actually imposed in Federal court? Each offense has an individual sentence. That's the right answer. So when we look at Subsection B of 404, it refers to a sentence in the singular, a specific sentence. How do we reconcile the reference to a singular sentence for an offense and the second reference to that as a reduced sentence as anything other than the singular? Two points, Your Honor. First, 1 U.S.C. 1 says that, in this context — Didn't the Supreme Court in the immigration notice case specifically disabuse us of that exact notion when it referred to a notice, the exact argument you're making? Well, Your Honor, I'm not familiar with that particular case. Okay. And I apologize if — but the second point is that the indefinite article A, it's indefinite. It's not specific. And Congress wrote a statute that cast a wide net at the eligibility. You're right that it means it's not specific to a particular sentence, but it is specific to the singular. In other words, you're right that A doesn't refer to a specific thing, but it doesn't refer to everything. It refers to one thing. Well — Right? Certainly, if a defendant had multiple covered offenses, he could receive relief on all of them, not just on — Right. Each one of them is a separate covered offense. But that doesn't mean that every sentence he received in the entire conviction is a sentence, is it, in the Federal scheme? So, for a non-covered offense, there would be a separate sentence for that non-covered offense. But Congress wrote a scheme that does cast a wide net at the eligibility stage because it recognizes that this is how Federal sentencing works, is also that sentences are interrelated and interconnected. And so the sentence for a non-covered offense will often be driven by a covered offense. See, I think that I understand sort of the policy justification for that argument, that these are interrelated, interconnected. But I don't see a textual case for that limitation. It seems to me that either your position is the resentencing, you know, sort of applies to the covered offense or the resentencing applies to everything. I don't know how we stop somewhere in the middle for things that seem to be interrelated. Well, Your Honor — I mean, it seems to me textually your position is either a covered offense or totally unrelated, forget about it, some offense that has nothing to do with this proceeding. Those are like the two options textually that seem plausible to me. Well, assuming the two sentences were imposed in the same judgment of conviction, we're not arguing that there were — if there's a sentence imposed in Nevada and then a sentence imposed in New Hampshire — Well, I guess I'm asking textually why not. The way that the district court or district courts look at sentences is in the individual judgment of conviction. And so if sentences are within the same judgment of conviction, which is when courts craft a total punishment, then we would go over the latter reading, that a district court has the discretion to reduce the sentences overall because that reflects how Federal sentencing works. And if this Court is faced with two competing textual interpretations, one of which furthers Congress's aims and the other of which frustrates it, this Court's decision in Bryant says to go with the one that furthers Congress's aims. Well, I mean, I guess the point that I'm trying to make is that it seems like to the extent that we're just, you know, sort of exercising a dose of common sense here, fine. But if we're going to exercise a dose of common sense, it seems like we should do it consistently with the text, not only to the singular A that Judge Luck has pointed to, but also to the fact that, you know, this arguably ambiguous phrase reduced sentence that comes with nothing after it is sandwiched between two references to covered sentences. Covered offenses. Covered offenses. The fact that Congress used the phrase covered offense at the beginning and at the end but left it out in the middle is a good reason to think that Congress was writing a broad statute that allows district courts to take into account the realities of how Federal sentences are imposed. Do you think, though, that that's really the ordinary meaning of that entire phrase? Here's an example, and it's not mine. It's one of my law clerks, so to the extent that it works, this person deserves the credit. What about the lawyers arguing in files, this case? The lawyers arguing in files can argue for 20 minutes rather than 15. Does that mean that you're entitled to argue for 20 rather than 15 in this case? Or if you also have a case set in March before the 11th Circuit, that you're entitled to argue for 20 minutes in that case? I mean, don't we just exercise a dose of common sense and recognize that what we mean is in this case? Your Honor, there's not a guideline saying that when courts have two covered offenses, say one under B1A and one under B1C, and the district court is going to impose a 30-year or 20-year sentence on the B1A offense, there's a guideline saying you should impose the same offense, the same punishment on the B1C offense because that's how Federal sentencing works. And so oral arguments don't work that way. Each one is taken individually. But here, district courts, although there is, in one sense, sentences on individual offenses, there's also a total punishment that courts impose. And the guidelines instruct district courts that unless there's a statutory maximum or minimum that whatever applies require doing something different, covered and non-covered offenses, you just impose the same sentence here. And here, Mr. Files, the district court up until the order on appeal has always treated the covered, the powder cocaine and the crack cocaine offenses the same regardless of the substance. We imposed a life term initially, reduced that down to 30 years without regard to the substance. And the district court's reasons for granting relief in the order on appeal weren't specific to crack cocaine. They were about things like post-sentencing rehabilitation, about the need to avoid unwarranted sentencing disparities. And the district court should be allowed to continue to treat those sentences, those terms of imprisonment in lockstep the way that it has been up until this point. Congress was legislating against this backdrop and knows that this is how Federal sentencing works. And so when it leaves out the phrase covered offense in the middle part of subsection B and also titles it the subsection defendants, allows the Bureau of Prisons to move for relief, and then uses the indefinite article, that's, there is a textual basis. We think we have the correct reading that district courts have the discretion, not the obligation, but that they have the discretion to grant relief because eligibility is not entitlement and we're still at the eligibility stage and the district court should be allowed to exercise discretion. Okay, very well. You okay? Yep. Let's hear from your adversary. Thank you. Thank you. May it please the court. Scott Gray on behalf of the United States of America. Legally, a case's holding encompasses two points. It's result in the necessary reasoning to reach that decision. Colloquially, a holding really boils down to two things, what and why. What did the court decide and why did it make that decision? Denson's what was that a hearing is not required for purposes of a first step back motion pursuant to Section 404. Part of Denson's why is that a sentence reduction cannot apply for non-covered offenses. Therefore, that statement is part of the court's holding. As Judge Luck noted, that aspect of Denson holding does not only appear in Denson but also appears in some form or another in other cases. Potts, it also occurs in Telsey, and there are general references to other limitations that the Denson court recognized in Taylor. Therefore, that is part of the court's holding. Turning to really the corollary of the prior panel precedent rule, that a case's holding cannot go beyond its facts, there are really two arguments for why the Denson decision does not extend beyond its facts. The first, which I think Judge Luck got to the heart of in his questions of my opponent, is that the actual issue in Denson required the court to look at the statutory scheme as a whole, and that is how this court often builds precedent. It interprets and construes statutes in a manner that looks at what the statutes do, not only in the case before the court, but in the other cases that invariably will come before the court. And so when the court was looking at the question of is a hearing required, it had to think not only about that particular defendant but about other defendants, particularly when the court was applying a fact-intensive and a necessary element-intensive analysis. The second argument is that Denson also doesn't necessarily outstrip its facts because there was a non-covered offense in Denson along with a covered one. Now, Files makes the argument that that doesn't really matter, but I submit to the court that that creates a bit of a chicken-or-egg question about which came first. And here that matters. The Denson court took the mechanics of the operation of a sentence off the table at the outset so that it wasn't necessary for the Denson court or for any other court, for that matter, to look into the mechanics of whether a concurrent sentence had been served, whether it had not been, or how those mechanics operated. Instead, the court said bluntly that there is no reduction available for non-covered offenses. Therefore, that statement is a part of its holding. It's also critical that Concepcion did not overrule Denson. It did not overrule the what of Denson, namely that a hearing is not required. It did not overrule the why either, namely the different pieces of the why. So first, the Concepcion court said nothing about whether a reduction is appropriate for non-covered offenses. As the court noted, the issue in Concepcion involved a covered offense. Separately, the Denson court also talked about guidelines calculations as an additional limitation. And the Concepcion court embraced that analysis in footnote 6 and in footnote 8 of Concepcion, making clear that what continues to anchor any resentencing proceeding is the original guidelines calculations accounting only for the changes brought about by the Fair Sentencing Act of 2010. And then finally, there is, I suppose, the thorniest issue in Concepcion, namely the issue about legal changes. The United States reads Concepcion to address the court's exercise of discretion, and that when the court — when a sentencing court is looking at that exercise of discretion, it can consider intervening in factual — intervening factual and legal changes. Now, it's notable that the Eleventh Circuit was already doing that prior to Concepcion. The Stevens decision, which the United States cites at some length in its supplemental brief, applied an analysis that is very similar to what the Concepcion court ultimately applied. And the Eleventh Circuit even cited some of the same authorities upon — I'm not sure that's your best argument. I mean, Denson was explicitly contrary to the ultimate holding of Concepcion. Denson essentially said you didn't need to consider these intervening changes in the law. And the Supreme Court essentially said, no, you're wrong, it can't, right? So I think it's more of a tension than an outright conflict. You don't have to decide that, do we? No, Your Honor. In other words, there could be problems with Denson, and Denson could be abrogated to a certain extent that have nothing to do with the issue that we have before us today, right? That's exactly right. So there are really two points. There can be tension with Denson, and it's still not undermined to the point of abrogation. And additionally, there can be alternative aspects of Denson's reasoning that remain good law, and that remains the holding of the court that it would follow. And with that, if the Court has questions about the holding versus dicta issue, I'm happy to address those. I've got one question. Can you help me out of this pickle that I find myself in, given our precedent that says, you know, sort of reasoning that is necessary to the result is holding and reason that is unnecessary is not? I mean, can we really say that among these four factors that Denson mentioned that the case would have come out differently? Can we be sure that the case would have come out differently but for that first factor? So I think it's the uncertainty that actually works in favor of that being a part of the court's holding. And I think the fatal flaw in Files' argument is that it really conflates the party's obligations to develop legal arguments with the court's authority to pronounce the law. The Denson court was making a multifaceted legal analysis, and it explained multiple reasons that cite that to support that decision. So does that mean that every time a court articulates one of these sort of flabby totality of the circumstances analysis and, you know, doesn't specify whether all pieces of this are necessary or some might be sufficient without the others, that we have to treat all of it as necessary? So I don't think so, Your Honor. But I think that it is an area that the court should approach with caution. But it also doesn't mean that the court should throw all of those elements of the decision out with the bathwater. I think — Well, let me ask this, counsel. Is — so at some point, maybe we could say that this particular component of Denson was not necessary. In other words, but for this, we still would have reached the same result. Is that true after Concepcion? In other words, now that we look at Denson after Concepcion — so as I read that paragraph, the one that we're talking about here, the limited remedy conclusion rests on two points. Point one is the point we're discussing, which is that the court is permitted to reduce a sentence only on covered offense and only as if Section 2 were in effect. The second point is the court is not free to change the defendant's original guidelines that are unaffected by Sections 2 and 3 to reduce a defendant's sentence on covered offenses based on changes in the law beyond those mandated in Sections 2 and 3. That's now — you may disagree with me, but I think that's gone. So in other words, all we're left with for the limited remedy is that first point, which would seem to me to be very necessary for that conclusion, because without that conclusion, I don't know what else is left on the — for us to conclude that it was a limited remedy. So, Your Honor, I think — In other words, does Concepcion having overruled part of it, in fact, help you? I'll take every bit of assistance I can get. But I think there are really two ways to read Denson and Concepcion together. And one is that Denson was applying sort of independent rationales, each of which is sufficient in and of its own right. The other is that the Denson court was applying a multifaceted or multifactored analysis, and it was looking at all of that in totality, and that one of those points has now been brought into tension by Concepcion, but the underlying whole still remains valid because maybe there's some — there's — maybe there is some tension there, but it's not enough tension to undermine that decision to the point of abrogation. I think either way, the court reads Denson, and either way, the court reads Concepcion. Ultimately, still, that part of Denson is part of its why. It's a necessary part of its why, and it's still holding in the case. It would be helpful for me if you can reach the textual — unless there's anything else — the textual arguments your opposing counsel makes. Absolutely. So the United States position, if the court reaches that textual analysis, is that there is a place for potential reductions for non-covered offenses when there are reductions for covered ones, but it's not about finding a relationship. It's ultimately about finding the right relationship. All right. So you're going to have to explain this to me. Again, I sort of understand the policy analysis for that, what makes sense. I don't think I understand the textual analysis at all. It seems to me it's either this or this. I don't understand how it is that we get here. The way I understand it, Your Honor, is that the middle ground is really grounded in this as-if principle, and reducing a sentence as if the Fair Sentencing Act were in effect at the time. And so the United States position is that there are — there is a class of cases where perhaps a defendant was subject to a statutory minimum sentence under the crack cocaine thresholds in the pre-Fair Sentencing Act world, and that has now changed under the First Step Act. And the United States was — is also attentive to the possibility that a court at sentencing then said, well, you're subject to this statutory minimum sentence for the crack offense. So for whatever other offenses you have committed, then I'm going to simply impose concurrent terms because I am sentencing you, essentially giving primary regard to the statutory sentence to which you were subject. The United States view is that that defendant could then step into the court, prove those facts out, and say that he should receive a reduction for the non-covered offenses. So there's no interrelatedness requirement? I — so I think the interrelated — what if — let me give you a hypothetical. What if somebody in a single indictment and in a single sentencing regime was tried and — was charged and tried on two separate offenses? Offense one is a crack cocaine conspiracy, and offense two is a conspiracy to steal Social Security numbers without any aggravated identity theft charge. One carries a statutory maximum of 15 years, so zero to 15, and the other carries, based on the weight of the crack cocaine offense in 1991, a mandatory minimum of 40 years or 30 years in Federal prison. Even though they are completely unrelated, you're saying that because one offense drove the bus, that means that the non-covered offense is covered? In the circumstance where a defendant could show that strong causal link, I think that the United States would take the view that that defendant can obtain a reduction, but I want to be very clear that interrelatedness is a key factor, but I think it's a necessary versus sufficiency sort of point, that proving a relationship will in virtually every case be necessary, but it won't alone be sufficient to attain a sentence reduction. I — I'll go back to Judge Newsom's question because it's a good one. Where is that distinction in the text? I'm — I'm reading it in the as-if clause in Section 404B and in the policy and — Tell me where in the as-if clause we get this, we have to consider relatedness, but it's not independently sufficient, but we are going to look to see if the crack offense was the primary driver of the sentence. Tell me where that is. I will — I will admit that there's not text that says exactly that point. I'm not going to — I'm not going to overread the statute. I think that what the sentence is and how the sentence works, it's important to read that in the light of the — of what Congress was attempting to address, which were the disparities that were caused by the pre-fair sentencing act thresholds. But so just in fairness, I mean, I get this is just an argument about unenacted purpose. It sounds to me like you concede that on the text alone, the answer is either covered offenses only or anything, that there is no, like, interrelatedness, you know, sort of vibe that we can sort of at least immediately tease out of the text. So I think — I think that's fair. I'm willing to agree that I'm building something on the text. The one sort of additional point I will make under that is that even if the Court views that as a discretionary question and not as a scope or eligibility question, the points that I'm ultimately addressing should still play in that analysis. So if — if the sort of statutory answer is that everything applies, it still remains a basic principle of sentencing in cases like Irie and many others that major variances require or essentially — Yes, but, Counsel, the district court has essentially already told us that that's what he would have done. I mean, so we're in a position where we would have to reverse and to be granted. It couldn't possibly be harmless. Yes, you're right, that if you're — if your reading is the correct reading for some possible way, then the Court has discretion under the total package doctrine to decide if it's going to, you know, shift the sentences or not. Here the district court has told us that it is, and I don't see how those reasons are bad reasons or unreasonable reasons. So I — that's not how I read the district court's opinion, Your Honor. I read the district court to be — I read — so it's certainly true that the district court reduced for the — it is certainly true that the district court reduced the sentence for the covered offenses, and that is an indication that the court might reduce the sentence for the non-covered ones. But that is not an indication that the court would. And if the court remands the case, the United States admits that it should be remanded with guidance to suggest that any reduction for the non-covered offenses needs to be attentive to the purposes of the First Step Act, which is to reduce sentencing disparities for crack cocaine offenders. And that, Judge Newsom, I see that my time is up. You can finish up. That the reduction for the non-covered offenses needs to be consistent with the particular purposes of the First Step Act, namely to reduce those sentencing disparities. And if the Court adopts an overbroad view, it would exacerbate sentencing disparities and essentially allow a windfall for defendants who committed various offenses but happened to commit a crack offense along the way. So with that, if there are no further questions, I thank the Court for its time. I would ask that it affirm. Very well. Thank you so much. Thank you. Mr. Wallenach, you've got all three minutes because we carried you beyond your allotted time. Thank you, Judge Newsom. Three quick points in rebuttal. First, as to what this Court should do, it should vacate and remand and not exercise its discretion in the first instance to try to consider whether these offenses were sufficiently related or whether what was driving what. When district courts have erred in concluding they lack authority under the First Step Act, this Court has vacated and remanded. It's vacated and remanded even if it's been ambiguous as to whether district courts have understood the scope of their authority. And this Court should just follow the same approach here. And the district court is well-versed in sentencing practices and can consider in its discretion the 3553A factors and will be able to look at the parties' arguments and determine whether and to what extent Mr. Files is – should receive any relief on the powder cocaine offenses. And it's not that – Do you agree with the government's position in its brief in Concepcion? Not – not entirely, no. So I just want to be clear. This is how I understand the government's position. This is from page 25 of the red brief in this case. In its brief on the merits in Concepcion, the United States stated its view, described above, that a court granting a section 404 reduction is not limited solely to reducing the specific sentence for the covered offense to the extent the offender's overall sentence embodies an intertwined sentencing – intertwined sentencing package. That's not your position? It seems like it is. That's close to our position, particularly the first part of that sentence. Where the government goes wrong is in trying to add in a limitation that would require a defendant at the eligibility stage to try to prove a counterfactual that a sentence would have been different. What this court should do and what it has done is it looks at whether a defendant – if a defendant is not serving a mandatory minimum, then district courts have the discretion to look at the individual as a whole. But your whole policy position rests on the sentencing package doctrine. What I don't understand is if you take the sentencing package doctrine out of it. In other words, sentences that are completely different for completely different crimes, that can't even be grouped together under the guidelines, literally have nothing to do with each other other than the fact that they rest in the same indictment and were sentenced at the same proceeding. How those can possibly meet anything that you're talking about. Well, Your Honor, Congress legislates on the macro level, not on the micro scale, and so it wrote a statute that cast a wide net at the eligibility stage, but it was able to do so safe in the knowledge that district courts would be able to look at the individual facts and piece out who should receive relief and who isn't. So the hypothetical defendant who had the identity fraud charge, that defendant may be eligible for relief, but that doesn't mean that he'll get it. The district court could look at that and say, you know what, that's not. How is that different, though, than the defendant who's being sentenced the exact same day by another judge in Nevada, the example that Judge Newsom gave you for an unrelated charge? It just happens to be the same day, but in different courtrooms as opposed to the same courtroom in the same indictment. The Supreme Court mentioned or addressed a very similar point in Concepcion and said that that's just how Federal sentencing works. It's left to the individual sentencing court's discretion, and that's the way it  Even in the same courthouse, taking outside the First Step Act sentences, different judges have different sentencing philosophies, but that's just the way that Federal sentencing works. I see that I'm over my time. Mr. Wallenberg, thank you very much. We note that you were court appointed. We made you earn what little money you did today. Thank you very much for your service to your client and to the court.